AETNA LIFE INSURANCE CO. *v.* JENNIE L. SULLIVAN.

**Life Insurance Policy—Increased Hazard.**
> Where the holder of a life insurance policy after receiving it becomes so far in the habit of drunkenness that he is afflicted with delirium tremens, the policy is forfeited and there can be no recovery upon it.

**Verdict of a Jury.**
> Where the jury returns a verdict in the face of the uncontradicted evidence of a credible, intelligent and unbiased witness, such verdict is palpably against the weight of the evidence and the circuit court in such a case should sustain a motion for a new trial.

APPEAL FROM TODD CIRCUIT COURT.

March 18, 1876.

OPINION BY JUDGE LINDSAY:

It is alleged in the answer of the insurance company that the insured, after the date of the policy upon which this action is founded, became so addicted to the use of intoxicating drinks as to impair his health, and that he thereby violated that stipulation of said policy, which provided in substance that if he should become so far intemperate as to impair his health or to induce delirium tremens the policy should become and be null and void.

It is not complained that the court erred in any of its rulings touching any question of practice, nor in the admission or rejection of evidence, nor in giving or refusing instructions to the jury. The complaint is that the proof sustained the defense above set out, and that the verdict of the jury, in favor of the assured, is flagrantly and palpably against the evidence.

It becomes necessary, therefore, that we shall examine the testimony upon which the jury acted. Several witnesses proved that for and during the two or three years preceding the death of the insured, he drank freely, and that his use of alcoholic drinks frequently run into what these witnesses denominate "sprees."

Dr. Bailey proves that in 1873 he prescribed for him for nervous-

ness, which, according to his own statement, was the result of a debauch. Dr. J. N. Bass, an educated physician and a practitioner of fifteen years standing, swears that he was called upon to prescribe for the insured in June, 1873; that he then found him suffering from delirium tremens; that he treated him for that disease or affectation, and that he recovered from the attack. The witness stated in detail the symptoms of the disease, and said that the patient was not delirious all the time, that he had lucid intervals, and that the delirium would come on in paroxysms.

In answer to the question, "Is there doubt in your mind that the disease for which you attended Sullivan in June, 1873, was a genuine case of delirium tremens?" the witness answered, "There is none; I think it was a genuine case of delirium tremens."

This testimony is wholly uncontradicted. A physician introduced by the appellee stated that it was sometimes difficult to distinguish the delirium incident to an attack of delirium tremens, from the delirium that results from fever, but he did not pretend to say that the symptoms detailed by Dr. Bass did not indicate the existence of the disease from which he swears the insured was suffering. Nor was he asked to express an opinion on that subject.

The witnesses, Allison, and S. H. Sullivan and wife, speak as to the condition and symptoms of the insured when sick in June, 1873. They saw no signs of delirium, although they were with him the greater portion of the time. They know that opiates were administered to him by direction of Dr. Bass, and know that he suffered from fever. They do not seem to have inquired as to the nature of the disease, and do not pretend to any medical knowledge, nor to any considerable experience as nurses of sick persons.

Allison states that the attack or disease was not like other cases of delirium tremens he had seen, but concludes by saying that he could not state that he knew delirium tremens when he saw it. Everything testified to by these witnesses is doubtless true, but it is only shown that they did not know what was the matter with the insured, and they did not observe symptoms that were discovered by the practiced eye of an educated physician, whose business it was, by a minute and critical examination of the patient, to ascertain the character of the disease for which he was about to prescribe. These witnesses swear to no fact which militates against the correctness of the conclusion reached by Dr. Bass, that the insured was then suffering from delirium tremens.

The record does not show that Dr. Bass was partial to the insur-

ance company.   Upon the contrary, he was the family physician of the brother of the insured, and was the attending physician upon the latter during his last and fatal illness.   It may be assumed from all the facts presented by the record that he is friendly to the appellee. His reputation for veracity is not questioned.   His statements are not contradicted, directly or indirectly, and there was no attempt made to show that he misunderstood the symptoms of the disease for which he prescribed for the insured in June, 1873.

In finding for the appellee the jury disregarded his evidence altogether.

A verdict directly in the face of the uncontradicted evidence of a credible, intelligent and unbiased witness, falls within that class of verdicts which are palpably against the weight of the evidence.   The circuit court should have awarded appellant a new trial.   For the failure to do so, the judgment is *reversed* and the cause remanded for a new trial and for further proper proceedings.

*Edward White, for appellant.   Petree & Reeves, for appellee.*